UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY W. BRISTOL ,

       Plaintiff,                      Civil Case No. 2:08-CV-13028

vs.                                    JUDGE PAUL D. BORMAN
                                          MAGISTRATE JUDGE DONALD A. SCHEER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____/

**OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are plaintiff Randy W. Bristol's ("Plaintiff") Objections to Magistrate Judge Donald A. Scheer's April 28, 2009 Report and Recommendation in favor of granting defendant, Commissioner of Social Security ("Commissioner"), Michael J. Astrue's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment. (Docket No. 21.) The Commissioner did not respond to Plaintiff's objections.

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff first filed an application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits on July 10, 1998. (Tr. 14.) After Plaintiff's initial application was denied, Plaintiff requested a hearing with an administrative law judge

1

("ALJ"), which was conducted on December 1, 1999, before ALJ William J. Musseman. (Tr. 14.) At the time of the hearing, Plaintiff was incarcerated in the Genesee County Jail and did not attend the hearing. The record indicates that Plaintiff's sister responded for him. (Tr. 14.) On March 2, 2000, ALJ Musseman issued an unfavorable decision, finding that the claimant had a severe impairment but was not entitled to disability benefits because he retained the ability to engage in substantial gainful employment, thus, he could do his past relevant work and other work. (Tr. 14.) The claimant requested review, but the Social Security Appeals Council declined to review the decision. (Tr. 14.) The claimant did not file for federal court review, so ALJ Musseman's decision became the final decision of the Commissioner on the issue of Plaintiff's disability through March 2, 2000. (Tr. 14.)

Plaintiff again filed applications for DIB and SSI benefits on December 16, 2003, with the alleged disability date of March 3, 2000. (Tr. 14-15.) The staff of Michigan's Disability Determination Service denied Plaintiff's new claims on April 15, 2004. (Tr. 281.) A requested *de novo* hearing was held on August 10, 2006, before ALJ Peter N. Dowd. (Tr. 15.) At the hearing, Plaintiff's counsel requested that ALJ Dowd reopen Judge Musseman's decision on the July 10, 1998 applications, arguing that "the provisions of Social Security Ruling 91-5p require reopening of these prior applications." (Tr. 14.) ALJ Dowd dismissed that request for hearing based on *res judicata* and the administrative finality of the prior decision.[1] (Tr. 14.) On May 9, 2008, the

---

[1] 20 C.F.R. § 416.1457(c)(1) provides that an ALJ may dismiss a request for a hearing when:
. . . (c) The administrative law judge decides that there is cause to dismiss a hearing request entirely or to refuse to consider any one or more of the issues because . . . (1) The doctrine of res judicata applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action. . . .

2

Appeals Council denied Plaintiff's request for review of ALJ Dowd's decision and on July 14, 2008, Plaintiff filed this action seeking review ALJ Dowd's decision. On April 28, 2009, Magistrate Scheer issued his Report and Recommendation, to which Plaintiff filed the objections that are currently before this Court. The Commissioner did not respond to Plaintiff's objections.

### B.      Plaintiff's Background

On the date of ALJ Dowd's decision, Plaintiff was forty-two years old. (Tr. 55.) He has a high school education in special education classes (Tr. 238) and has worked semiskilled jobs as a laborer (1990-1997), a salvage yard worker (1991-1998) and a "rec man" (1999-2000). (Tr. 74-81.) In completing his work history report, Plaintiff described his various job duties as a salvage yard worker: "Cut cars up, [put] transmissions on racks, take car tires off. . . . Lifted transmissions & carried 8-9 feet every day. Tires carried 3 feet every day. Cutting up cars ex. Tearing rotors off, struts & carried approx. 12 feet every day." (Tr. 76.) He also indicated that his job as a salvage worker involved the use of machines, tools, equipment and technical knowledge and skills. (Tr. 76.) In describing his work as a "laborer," Plaintiff indicated that he used a fork lift, walked and stood for 13 hours a day and handled and grasped big objects for up to 4 hours a day. Plaintiff also worked as an auto mechanic assistant from 1994-1995 where he was "[s]witching motors around for vehicles for them. Taking out one vehicle and putting another one." (Tr. 303.) His auto repair job also included the use of a hoist and hand tools, including air guns. (Tr. 304.)

Plaintiff stopped working in July 1998; from 1999 through 2003, Plaintiff was imprisoned for criminal sexual misconduct for sexually molesting his 14 year old niece. During the course of his treatment in prison, Plaintiff reportedly "gained a great deal of insight and self awareness." (Tr. 176.) Plaintiff stated that following his parole from prison, he was denied employment because of

his criminal history. (Tr. 320.) Plaintiff also testified that he was taking medication for a stress-related seizure disorder (Tr. 309, 313) and suffered from carpal tunnel and stomach discomfort. (Tr. 314, 320.) Plaintiff stated that he had been filling out job applications and believed he could perform work if it were offered to him but could not "guarantee it." (Tr. 319.)

The medical evidence indicates that Plaintiff has had five psychological evaluations since 2000. Four of the five examiners, Skinner, Marble, Dickson and Brundage, did not diagnose mental retardation. Skinner observed that: "Mr. Bristol's mental status is essentially within normal limits." (Tr. 190.) Marble noted that Plaintiff experienced "some form of moderate learning disability, the degree of which is unclear, and difficulty with reading and writing, sometimes concentration, spelling and vocabulary, but otherwise functions adequately." (Tr. 197.) Dickson observed that Plaintiff's mental state would "mildly impair his performance of work related activities." (Tr. 241.) Brundage specifically declined to diagnose mental retardation due to Plaintiff's work history. (Tr. 257.) Plaintiff reported to Dr. Dickson in 2004 that he resided with friends and was able to cook, clean house and do laundry, vacuum, pay bills and count money, grocery shop and independently care for his personal hygiene. (Tr. 239.) The fifth examiner, Dr. Sommerschield, on whose opinion Plaintiff relies most heavily, examined Plaintiff on August 2, 2006 and concluded that Plaintiff was "functioning consistently intellectually and academically within the mildly retarded range of intelligence." (Tr. 274.) ALJ Dowd also heard the opinion of a vocational expert, Stephanie Leech, who testified at the hearing that Plaintiff could perform thousands of jobs, currently available in the nation's economy, including packer positions, janitorial, dishwasher and other kitchen-type work. (Tr. 337-338.)

**II.    ANALYSIS**

    **A.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r Soc. Sec.,* 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).

This Court has jurisdiction to review the Commissioner's denial of Plaintiff's disability benefits. *See* 42 U.S.C. § 405(g). But in reviewing that decision, the Court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the Commissioner's decision is limited to an inquiry into whether his findings were supported by substantial evidence and whether he employed the proper legal standards in reaching his conclusion. *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm, even if the reviewing court would decide the matter differently . *Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

**B.       Plaintiff's Objections to the Magistrate Judge's Report and Recommendation[2]**

Plaintiff's objections assert that the Magistrate Judge failed to address important arguments and that his conclusion that Plaintiff did not meet the listing requirements of 12.05 C was not supported by substantial evidence.  In order to obtain benefits, a claimant must prove that he suffers from a disability, which is established by demonstrating that the he or she cannot engage in substantial gainful activity because of "any medically determinable" physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 20 C.F.R §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  The social security regulations articulate a five-step sequential process for evaluating disability. See 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3]  If the

---

[2] This Court notes that Plaintiff's counsel has violated the Eastern District of Michigan Rules of Civility applicable to counsel's communications to the Court.  These rules require that counsel "speak and write civilly and respectfully in all communications with the Court." *See* United States District Court, Eastern District of Michigan, Civility Principles, *Attorneys' Responsibilities to the Court*.  The following examples, from Plaintiff's objections to the Magistrate Judge's Report and Recommendation, submitted unpaginated, highlight Plaintiff's counsel's continuous lack of civility: (1) "it appears that the Magistrate Judge did not even 'deign' to read the Plaintiff's brief." (Pl.'s Obj. 2);  (2) the Magistrate Judge makes "an absurdly misleading statement" regarding the medical evidence (Pl.'s Obj. 2); (3) the Magistrate Judge did not mention a certain medical evaluation because "it was not mentioned in Defendant's brief." (Pl.'s Obj. 4); (4) the Magistrate Judge "dutifully parroted" ALJ Dowd's "pretext" for denying benefits (Pl.'s Obj. 5); and (5) the Magistrate Judge and ALJ Dowd were operating under "the fallacy of their 'mindless fixation' on Bristol's work history as the *sine qua non* test for disability [under the listings]."  (Pl.'s Obj. 6.)

While the Court notes this unprofessional conduct, Plaintiff's counsel's misconduct does not in any way color the Court's review of the substantive legal issues in the case, or this ruling.

[3] "A five-step analysis is utilized for evaluating disability claims. 20 C.F.R. § 404.1520. The claimant must first show that she is not engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Next, the claimant must demonstrate that she has a "severe impairment." 20 C.F.R. § 404.1520(c). A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." 20 C.F.R. § 404.1520(d). If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has

Commissioner can make a dispositive finding at any point in the review, no further finding is required. See 20 C.F.R. §§ 404.1420(a), 416.920(a). The Commissioner is required to consider a claimant's impairments in light of the Listings, which define impairments that are considered severe enough to prevent the claimant from engaging in substantial gainful activity.

ALJ Dowd concluded that Plaintiff's case failed at step three based upon his finding that: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 18.)[4] Plaintiff contends that this finding does not properly address his claim that he satisfied Listing 12.05C in 20 C.F.R. Part 404, Subpart P, Appendix 1, which provides in pertinent part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant

---

done in the past. 20 C.F.R. § 404.1520(e). Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. 20 C.F.R. § 404.1520(f). The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citing *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990)).

[4] The regulations also provide that if the claimant suffers from a nonexertional as well as an exertional impairment, both are to be considered. ALJ Dowd found that Plaintiff did not demonstrate that he was exertionally limited by his impairments. (Tr. 19-23.) ALJ Dowd did conclude, however, that Plaintiff could not perform his past relevant work due to his experiences with seizures but that he could perform "other work" and therefore was not disabled. (Tr. 23-24.) Plaintiff's objections, however, relate to the findings regarding mental impairment under 12.05 C.

>  work-related limitation of function. . . .

Where a claimant relies on paragraph C, as Plaintiff does here, the Commissioner is specifically directed to assess the claimant's actual functional limitations regardless of low IQ and claimed impairment: "Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a "severe" impairment(s), as defined in §§404.1520(c) and 416.920(c)." 20 C.F.R., Part 404, Subpart P, Appendix 1, Section 12.00. In other words where, as here, the claim is based upon a qualifying IQ score and an additional impairment, the Commissioner specifically will consider whether that claimed impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." This directive recognizes that in certain instances an individual may have limited mental capacity and some additional physical impairments but still may be able to perform low-level work.

Reviewing the clinical diagnostic evidence of Plaintiff's mental impairment, the Magistrate Judge observed that Plaintiff underwent five psychological exams between 2000 and 2005 and that of the five, four did not diagnosis mental retardation. (Tr. 190, 197, 241, 257.) The fifth, Dr. Sommerschield, on whose opinion Plaintiff relies most heavily, repeated IQ testing and corroborated Plaintiff's earlier test scores. (Tr. 273.) Dr. Sommerschield concluded that Plaintiff operated in the "mildly retarded range of intelligence." (Tr. 274.) ALJ Dowd was thus presented with conflicting medical opinions and concluded that the weight of medical evidence did not support a finding of mental retardation. (Tr. 21-22.) In such situations, resolution of opposing opinions is left to the

ALJ.  *See Mullins v. Sec'y of Health and Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) (where claimant's argument rests on the weight to be given conflicting medical opinions, the ALJ's factual findings will stand).

ALJ Dowd next analyzed Plaintiff's actual functional impairments, as the regulations directed him to do, and concluded that Plaintiff did not qualify under Listing 12.05 C based upon his extensive work history and his mild limitations of daily and social functioning.  In reaching this conclusion, ALJ Dowd appropriately focused on Plaintiff's documented employment record and adaptive social skills.  *See West v. Comm'r of Soc. Sec.*, 240 Fed. App'x 692, 698 (6th Cir. 2007) (upholding ALJ's determination of no disability where claimant with low IQ continued to engage in part-time work and care for himself, shop for groceries and interact with friends); *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. App'x 450, 452 (6th Cir. 2007) (affirming finding of no disability where claimant with low IQ scores was able to perform semi-skilled labor for many years); *Pearson v. Comm'r of Soc. Sec.*, 2008 WL 2325617, No. 07-CV-509 at *6 (W.D. Mich. May 19, 2008) (finding no deficits in adaptive behavior where plaintiff with low IQ scores had lengthy and successful work history, *citing Crayton v. Callahan*, 120 F.3d 1217, 1219-1220 (11th Cir. 1997) ("[A] valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior.")).

ALJ Dowd summarized his findings as follows:  "As an auto mechanic helper the claimant described work involving the setting of motors into a vehicle.  He said this job required him to operate a hoist and to use air guns.  As a salvage yard laborer the claimant testified that he operated a forklift, used a blow torch and used an air gun to tear apart cars. . . . I point this out to highlight that the claimant has made an adaptation to work activities in the past which would not be indicative

9

of a severely retarded individual." (Tr. 18.) ALJ Dowd also considered the significance of Plaintiff's social "adaptations," noting that Plaintiff was able to cook, clean, do the laundry, vacuum, shop and pay bills. (Tr. 22, 239.) Contrary to Plaintiff's criticisms in its objections, ALJ Dowd clearly did analyze Plaintiff's "deficits in adaptive functioning," as that term relates both to Plaintiff's work and his social functioning. The fact that the phrase "deficits in adaptive of functioning" does not appear in ALJ Dowd's opinion does not alter the fact that he did engage in the appropriate analysis. Finally, while ALJ Dowd concluded that Plaintiff's seizure disorder prevented him from working at unprotected heights or around moving machinery (Tr. 23), he also considered the opinion of a vocational expert who testified at the hearing that there were many unskilled jobs available in the economy that Plaintiff was capable of performing despite this limitation. (Tr. 337-339.)

Contrary to Plaintiff's counsel's characterization of ALJ Dowd's and the Magistrate Judge's "mindless fixation" on Plaintiff's work history, this Court finds that in fact both judges placed appropriate emphasis on Plaintiff's documented work history and social adaptive skills, which the regulations expressly direct the Commissioner to do when evaluating a claim based upon listing 12.05 C. Despite his low intellect, Plaintiff has a long work history and the ability to perform many unskilled jobs. This Court agrees with the Magistrate Judge's conclusion that ALJ Dowd's determination that Plaintiff's claimed impairment does not meet the listing contained in section 12.05 C, and that Plaintiff is not disabled, was supported by substantial evidence.[5]

---

[6] At the hearing before ALJ Dowd on August 6, 2006, Plaintiff's counsel *sua sponte* asked ALJ Dowd to consider reopening Plaintiff's prior applications for benefits and, in particular, the March 2, 2000 decision issued by ALJ Musseman denying Plaintiff's claim for benefits. (Tr. 291.) Plaintiff's counsel argued that Plaintiff, due to his mental condition, was unable to understand his right to appeal the 2000 decision and that therefore the decision should be reopened under the

**III.     CONCLUSION**

For these reasons, the Court:

**(1)     ADOPTS** the Magistrate Judges's Report and Recommendation;

**(2)     DENIES** Plaintiff's Objections to the Magistrate Judge's Report and Recommendation; and

**(3)     GRANTS** Defendant's Motion for Summary Judgment.

---

provisions of Social Security Ruling 91-5p ("SSR 91-5p"), "Titles II and XVI: Mental Incapacity and Good Cause for Missing the Deadline to Request Review," reprinted in West's Social Security Reporting Service Rulings 1983-1991. Ruling 91-5 extends the deadlines for review of prior decisions where the claimant can establish that he or she lacked the mental capacity to understand the procedures for requesting review. This was the first time that Plaintiff presented this argument. ALJ Musseman did not reopen that earlier decision. Significantly, Plaintiff's instant Complaint filed in this Court almost two years later (July 14, 2008) (also unpaginated) does not mention this provision as a basis for seeking review of ALJ Dowd's opinion, or even specifically seek review.

In any event, this Court need not address this issue for several reasons. At all periods relevant to Plaintiff's prior claim, Plaintiff was either working or incarcerated. (Tr. 230, 238, 196.) Plaintiff was gainfully employed from 1990 through July, 1998 and incarcerated in 1999 where he remained until December 2003. Indeed, Plaintiff also held a job while in prison from 2000-2003 (Tr. 74.) Plaintiff's Motion for Summary Judgment in this Court does not deny ALJ Dowd's findings of fact in this respect: "The claimant stops working at a salvage yard in 1998 which is about the time the events which lead to a criminal conviction appear to take place. The claimant appears to have been in jail from April 1999 until April 2000. I note that the computer records of the State of Michigan indicate that the claimant was convicted in Genesee County Court on April 25, 2000 of criminal sexual conduct . . . [and] was paroled from prison on December 12, 2003." (Tr. 17.)

At the hearing before ALJ Dowd, Plaintiff presented evidence dating back to his prior employment and mental health history for the years 1990-1998, the very time period for which he seeks to have this Court reopen a prior proceeding. Further, ALJ Dowd specifically asked Plaintiff and his counsel if there was any other evidence that they wished to present or any thing else that they wanted him to consider before closing the hearing. (Tr. 343.) The facts clearly evidence that Plaintiff was either working in society or working while incarcerated during that earlier period that was the subject of the hearing before ALJ Musseman. (Attachment A, Plaintiff's Work History Report.)

11

**SO ORDERED.**

                S/Paul D. Borman
                PAUL D. BORMAN
                UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2009

            CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 30, 2009.

                S/Denise Goodine
                Case Manager